Edward T. CANNON,
Plaintiff-Appellee,

v.

CONSOLIDATED FREIGHTWAYS
CORP. and Teamsters Local 710,
Defendants-Appellants.

No. 74–2081.

United States Court of Appeals,
Seventh Circuit.

Heard Sept. 17, 1975.

Decided Oct. 28, 1975.

Raymond J. Kelly, Jr., Chicago, Ill., for defendants-appellants.

J. S. Krakauer, Seymour Schriar, Sidney Z. Karasik, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.*

CUMMINGS, Circuit Judge.

This suit was filed under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)). Plaintiff was an employee of defendant Consolidated Freightways Corporation of Delaware ("Consolidated") and a member in good standing of defendant Local Union No. 710 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"), the bargaining representative of Consolidated's truck drivers, including the plaintiff. Consolidated, an interstate shipper, employed plaintiff as an over-the-road truck driver at its Waukegan, Illinois, office.

On March 5, 1970, in St. Louis, Missouri, plaintiff had an accident while driving an empty Consolidated tractor and trailer. When plaintiff returned to the St. Louis terminal to report the accident, Robert Weber, defendant's Freight Operations Manager in St. Louis, asked plaintiff to take a sobriety test. Plaintiff refused even after Weber warned him that if he did not take the test, he could be fired. On the day after the accident, when in Chicago, plaintiff telephoned John Kelly, a business agent of the Union, and informed him of what transpired in St. Louis. Kelly told plaintiff that he should have called him from St. Louis and should have taken the sobriety test. Six days later, plaintiff received Consolidated's letter discharging him for refusing to submit to a sobriety test.

Plaintiff then contacted Kelly, who twice asked M. L. Jones, the manager of Consolidated's Waukegan terminal, to put Cannon back to work. When these efforts failed, Kelly filed a grievance on March 16th with the Joint Grievance Committee, consisting of three union and three management representatives, on plaintiff's behalf. After a hearing where plaintiff was represented by Kelly, the grievance was denied on the basis of an informal rule that the refusal to submit to a sobriety test was a presumption of drunkenness.[1]

Thereafter plaintiff filed suit in district court alleging that the Union breached its duty of fair representation in failing to raise the defense that "he was being discharged by virtue of the consequences of refusing to take a [sobriety] test which consequences had not been adequately made known to him beforehand," and that the Grievance Committee decision violated the collective bargaining agreement in that the rule had not been properly promulgated.[2] Accordingly, plaintiff sought reinstatement with back pay without loss of benefits (such as pension and seniority rights) plus $50,000 punitive damages and reasonable attorneys' fees.

Pursuant to a motion of the Union and over objection of Consolidated, on January 22, 1973, the district court dismissed the Union with prejudice and without costs. On April 25, 1973, Consolidated moved for summary judgment on the ground that plaintiff failed to prove a breach of the Union's duty of fair representation because the district court had

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Article 44 of the National Master Freight Agreement, in effect at the time of the accident, provides:

   "The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee * * * except no warning notice need be given to an employee before he is discharged if the cause of such discharge is * * * drunkenness."

   The contract provision contained no reference to the sobriety test. A new agreement, effective April 1, 1970, provided in Article 46 that "Refusal to take a sobriety test shall establish a presumption of drunkenness."

2. In the complaint, plaintiff alleged violations of Article 44 of the National Master Freight Agreement and Article XXIII of the Labor contract between the Union and Consolidated. Plaintiff no longer relies on Article XXIII. Article 44 is discussed *infra*.

dismissed the Union with prejudice and lacked jurisdiction to rehear a final and binding grievance decision. On July 2, 1973, the district court handed down a brief memorandum opinion and order denying the motion for summary judgment, holding that plaintiff was still free to attempt to prove a breach of the duty of fair representation by the Union because the court's January 22, 1973, order "did not constitute a merits determination. All that it represents is a final determination that a subsequent legal action may not be maintained by the plaintiff against the union for the events involved in this lawsuit. Plaintiff is still free to attempt to prove a breach of the duty of fair representation by the union in the instant action." The court also held that although its scope of review of grievance decisions was limited, it had jurisdiction to consider the legality of the grievance decision.

After a two-day trial in March 1974, the district court delivered an oral opinion adverse to Consolidated. The court held that the Union failed to represent plaintiff adequately in the grievance proceedings because it did not argue that the sobriety rule had been improperly promulgated. Having found that the Union breached its duty of fair representation, the court considered the merits of the breach of contract claim and concluded that the Grievance Committee's decision was invalid because it was not shown that plaintiff knew or should have known of the consequences of his refusal to take the sobriety test. It ordered the plaintiff reinstated with back pay and with restoration of his seniority and pension rights; because no malice was found in Consolidated's conduct, other relief was denied. We reverse.

This appeal presents two questions: whether the Union breached its duty of fair representation and whether the district court exceeded its authority in reviewing the merits of the Grievance Committee's ruling.

## I

■ "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842. To prove arbitrary or discriminatory treatment, the plaintiff must show that the Union's conduct was intentional, invidious and directed at that particular employee. *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473; *Desrosiers v. American Cyanamid Co.*, 377 F.2d 864 (2d Cir. 1967). Our review of the record satisfies us that the Union did not breach its duty of fair representation in this case.

The union business agent, John Kelly, made two efforts to convince Consolidated to rehire Cannon because of plaintiff's long record of satisfactory service. When the efforts failed, Kelly instituted grievance proceedings. As the district court found, Kelly was "bent on doing a good job" in representing the plaintiff before the Committee. What transpired at the hearing demonstrates that Kelly made a good faith effort to plead plaintiff's case.

At the March 30th grievance hearing, Consolidated's representative read the letter terminating Cannon and the affidavit of R. G. Weber, its Freight Operations Manager in St. Louis. The affidavit stated that Cannon had refused to take a sobriety test and concluded "I explained the consequences if he [Cannon] refused to take the test and again offered him the opportunity to take the test. He refused the second time and I terminated him." Statements of two other St. Louis witnesses confirming Weber's account were read into the hearing record.[3]

For plaintiff, Kelly argued to the Joint Committee that it was unlikely that anyone would have been drinking at 11:00 A.M. when the St. Louis accident

---

**3.** At the trial, plaintiff admitted Weber had informed him that a refusal to take the sobriety test could result in his termination.

occurred. He also noted that the police had not arrested plaintiff for being under the influence of alcohol and commented that Consolidated's truck might have had equipment defects. Kelly summed up as follows:

"I also advised them that Mr. Cannon had 18 years with this company, he had a good safety record, and to the best of my knowledge, as long as I have been handling the barn, I had never heard any charges of intoxication against him while he was working, and in my opinion this fellow ought to be put back to work and compensated for all the time he lost."

■ Subsequently, plaintiff told the Joint Committee that he didn't think he had to take the sobriety test and that he had not been drinking. Thereafter, the Joint Committee announced that the grievance was denied.[4] Nothing in the record indicates that the Union's handling of the grievance was arbitrary or discriminatory. *Vaca v. Sipes, supra.* Plaintiff does not dispute that Kelly acted without malice or prejudice towards Cannon, but argues that the failure of the Union to raise the defense that the rule was improperly promulgated constitutes a *per se* breach of the duty of fair representation. We disagree.

At the Joint Grievance Committee hearing, Kelly admitted that he knew of the existence of that body's unwritten rule that an employer has the right to demand a sobriety test where the employee may have been intoxicated. In denying the grievance, the Joint Committee obviously credited Weber's affidavit that he had explained to plaintiff the consequences of his refusal to take the test and then offered him a second chance to take it before terminating him. Therefore, it is immaterial that the sobriety rule was not reduced to writing.[5]

■ Further, since the Joint Committee must have believed Weber's account of the St. Louis incident rather than plaintiff's, we fail to see how the Union breached its duty to represent plaintiff by not arguing to the Joint Committee that the sobriety rule should have been formally promulgated. At most, the failure to raise the defense was an act of neglect or the product of a mistake in judgment. However, "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir. 1970). Therefore, the Union adequately discharged its duty of fair representation. *Humphrey v. Moore,* 375 U.S. 335, 350, 84 S.Ct. 363, 11 L.Ed.2d 370.

## II

■ It is well settled that "the refusal of courts to review the merits of

---

4. In August 1970, plaintiff filed a charge with the Thirteenth Region of the National Labor Relations Board, claiming that the Union had violated Section 8 of the National Labor Relations Act (29 U.S.C. § 158). However, the Regional Director refused to issue a complaint, stating as follows:

"From the investigation, the evidence shows that the Union did, in fact, process your grievance and that the Union's failure to process your grievance as far as you desire, or to achieve the result you desire, was due to its judgment of the merits of your grievance, and not to unfair, arbitrary or discriminatory reasons. I am, therefore, refusing to issue a complaint in this matter."

Plaintiff did not perfect an appeal from the ruling of the Regional Director.

5. Plaintiff contends that the last paragraph of Article 44 of the National Master Freight Agreement required the sobriety rule to be written. That paragraph provides as follows:

"Uniform rules and regulations with respect to disciplinary action may be drafted for each state but must be approved by the Joint State Committee for such state and by the Joint Area Committee. Such approved uniform rules and regulations shall prevail in the application and interpretation of this Article."

It should be noted that the first part of this paragraph is not mandatory. Also, there has been no showing that the sobriety test rule fits into the category of "Uniform rules and regulations with respect to disciplinary action." In any event, the interpretation of this Article was for the Joint Committee rather than the judiciary.

an arbitration award is the proper approach to arbitration under collective bargaining agreements."[6] *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424. Any other rule would thwart the federal policy encouraging settlement of industrial strife through means chosen by the parties. *Id.* ; see 29 U.S.C. § 173(d).[7] This judicial deference to the arbitrator's decision is founded upon the desire to effectuate the decision of the union and company to employ arbitration and upon the belief that the circumstances surrounding arbitration insure fair treatment to the individual employee. Of course, a court may review and set aside an award if the grievance is not arbitrable (*Local 81, American Federation of Technical Engineers v. Western Electric Co., Inc.,* 508 F.2d 106 (7th Cir. 1974); *Los Angeles Newspaper Guild Local 69 v. Hearst Corp.,* 504 F.2d 636 (9th Cir. 1974), certiorari denied, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87), or the arbitrator exceeds his contractual authority. *International Ass'n of Machinists, District 8 v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir. 1969), certiorari denied, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70; *Torrington Co. v. Metal Products Workers Union, Local 1645,* 362 F.2d 677 (2d Cir. 1966). Similarly, the court can review the award when the indicia of fairness are absent. For example, in *Vaca v. Sipes, supra,* the Court held that review was appropriate where the union breached its duty of fair representation. Other courts have recognized that the arbitrator's decision can be set aside where it is arbitrary or capricious (*Mogge v. District 8, International Ass'n of Machinists,* 454 F.2d 510, 513 (7th Cir. 1971); *Yellow Cab*

*Co. v. Democratic Union Organizing Committee Local 777,* 398 F.2d 735, 737 (7th Cir. 1968), certiorari denied, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561), or where the process is tainted by fraud or deceit. *Margetta v. Pam Pam Corp.,* 501 F.2d 179, 180 (9th Cir. 1974); *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 37 (3d Cir. 1968).

None of these circumstances is present in this case. The plaintiff has failed to prove a breach of the duty of fair representation; he does not otherwise challenge the fairness of the Grievance Committee's action nor question its authority under the contract. Under the collective bargaining agreement, the decision of the Grievance Committee is final. Therefore, the district court erred in considering the merits of the grievance. See *Local 13, International Longshoremen's & Warehousemen's Union v. Pacific Maritime Ass'n,* 441 F.2d 1061 (9th Cir. 1971), certiorari denied, 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664; *Haynes v. United States Pipe & Foundry Co.,* 362 F.2d 414 (5th Cir. 1966). That the district court would have interpreted the contract differently than the Joint Grievance Committee does not give the court the power to reverse the Committee's decision. See *United Steel Workers v. Enterprise Wheel and Car Corp., supra,* 363 U.S. at 599, 80 S.Ct. 1358; *Local 7–644 Oil, Chemical & Atomic Workers International Union v. Mobil Oil Co.,* 350 F.2d 708, 712 (7th Cir. 1965), certiorari denied, 382 U.S. 986, 86 S.Ct. 563, 15 L.Ed.2d 474.

Because the plaintiff has not demonstrated the Union's breach of the duty of fair representation and because the district court exceeded its authority in re-

---

**6.** Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)) confers jurisdiction on district courts over breaches of collective bargaining contracts. See *United Electrical Etc. v. Honeywell, Inc.,* 522 F.2d 1221, 1224 (7th Cir. 1975). Under that provision the court below of course had jurisdiction of this action whether or not there was a breach of the Union's duty of representation. However, absent such a breach, it was not empowered to review the merits of this award.

**7.** This statement of Congressional policy provides:

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."

viewing the merits of the Joint Committee's decision, the judgment is reversed with directions to dismiss this action with prejudice.[8]

---

8. In view of this disposition, we do not reach other points raised by Consolidated.