**Andrew L. ESSARY, Plaintiff,**

v.

**The RAILROAD YARDMASTERS OF AMERICA et al., Defendants.**

**No. 77 C 4651.**

United States District Court, N. D. Illinois, E. D.

Sept. 15, 1980.

Michael S. Welzien, Villa Park, Ill., and George C. Pontikes, Foss, Schuman & Drake, Chicago, Ill., for plaintiff.

Edwin H. Benn, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for Railroad Yardmasters of America.

## ORDER

BUA, District Judge.

The plaintiff filed this suit against defendant Railroad Yardmasters of America, for breach of its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The case is presently before the court on defendant's motion for summary judgment. Rule 56, Fed.R.Civ.P.

After having reviewed the affidavits, depositions, and exhibits submitted by the parties, it appears that the plaintiff and defendant are in substantial agreement as to most of the facts involved in this suit.

The plaintiff is a former employee of Chicago and Northwestern Transportation Company (C&NW), who was employed as a yardmaster. On May 15, 1974 plaintiff was absent from work as a result of being hospitalized with gunshot wounds after a dispute with a friend. This dispute resulted in the friend's death. While he was in the hospital he was arrested and charged with murder. He later pleaded guilty to involuntary manslaughter. The plaintiff was hospitalized for about one week as a result of his injury. On May 22, 1974 C&NW sent plaintiff a notice stating that he was under formal investigation for his "failure to protect [his] regular assignment from May 15 through May 22, 1974, as [a] result of being arrested, charged with a capital crime and being held by police authorities."[1] A hearing on this charge was held on July 25, 1974. The plaintiff was represented by Richard Rasmussen, general chairman of the defendant union at the Proviso railroad yard where plaintiff worked. The plaintiff and Rasmussen fully expected that the hearing would result in plaintiff's dismissal. As a result, just prior to the hearing Rasmussen told the plaintiff that when plaintiff received his notice of dismissal from the company he was to call Rasmussen and an appeal would be filed.

At the hearing and at all times prior thereto, the union representative conducted himself to the complete satisfaction of the plaintiff. He had investigated the charge against plaintiff and had been made aware of the fact that plaintiff's father, also a C&NW employee, had called the yard on the morning of the shooting and had informed the general yardmaster on duty of his son's inability to report for work as scheduled. He also met with the plaintiff to discuss the charge. The general yardmaster did, in fact, arrange for Essary's assignment to be covered by another employee during Essary's absence. Plaintiff indicated at the hearing and in his deposition that he presented everything that he wished to present at the hearing. Plaintiff's relationship with the union prior to his discharge was cordial and he had never

---

1. Failure to protect one's assignment was cause for dismissal. If an employee could not work as scheduled he was required to arrange for another employee to cover his shift. This could be done by notifying the general yardmaster, a company official.

challenged the union leadership or had any personal disputes with any union officer. Andrew Essary, Sr., plaintiff's father, testified at his deposition that he and Richard Rasmussen were long time acquaintances and enjoyed friendly relations. Thus, it is undisputed that prior to his discharge plaintiff was adequately represented by the union, although he was not a member of the union,[2] and that both he and his father enjoyed good relations with Richard Rasmussen.

According to the plaintiff's deposition testimony, after he received the expected notice of discharge, he called Richard Rasmussen on the telephone and requested that Rasmussen appeal the discharge.[3] The collective bargaining agreement in effect at the time provided that:

> An appeal, if taken, must be filed within thirty days with the next higher officer, and thereafter up to and including the highest officer designated by the company to whom such appeals may be made.

Rasmussen assured plaintiff that his appeal was being processed and in a number of subsequent conversations repeated this assurance. Andrew Essary, Sr. testified in his deposition that he too spoke to Rasmussen about an appeal of his son's discharge on a number of occasions and was assured that it was being processed. Needless to say no appeal was filed within the thirty day limit.

Richard Rasmussen's deposition indicates the existence of a genuine issue of fact with regard to plaintiff's request that an appeal be filed on his behalf. Rasmussen flatly denied that Essary ever requested that an appeal be taken, although he did recall that he was made aware that Essary had requested the union to which he belonged to file an appeal. This appeal was not timely filed. The plaintiff was a member of the United Transportation Workers Union (UTU). Rasmussen testified at his deposi-

tion that the UTU local chairman informed him several months after plaintiff's discharge that Essary had asked the UTU to handle his appeal. Rasmussen later informed Essary's attorney that an appeal was being processed in Cleveland where UTU headquarters are located.

Thus, in essence, Essary's claim that the union breached its duty of fair representation depends on what inference can be drawn from Rasmussen's representation that he would file an appeal if asked and his failure to do so after having been asked to by Essary. Rasmussen knew that Essary had a meritorious defense to the discharge, and he also knew that Essary had been charged with murder after the shooting incident. This court believes that a jury might draw the inference that Rasmussen intentionally allowed Essary's appeal time to expire because of Essary's involvement in the shooting. Thus, the question of whether or not Essary requested Rasmussen to file an appeal is a material question and cannot be determined without a factfinder making a credibility determination. While this court may believe that such an inference is not unreasonable, innocent inferences could be drawn from the facts as well. Nevertheless, on a motion for summary judgment, it must be determined that there is no genuine issue of material fact and the court must accept the truth of the facts presented by the party opposing the motion. *Mitchell v. Pilgrim Holiness Church*, 210 F.2d 879 (7th Cir. 1953). Evidence that raises doubts as to an issue of material fact is always construed in favor of the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The evidence presented by the parties presents a close question as to whether or not a permissible inference can be drawn that the union intentionally failed to pursue a requested appeal because

---

**2.** Although plaintiff was not a member of defendant union, the union has a duty to fairly and equitably represent both the union and non–union employees. *Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

**3.** According to Rasmussen's undisputed deposition testimony, a grievant must request that an appeal be filed.

of the criminal charges lodged against plaintiff, but given the procedural posture of the case, the court believes the plaintiff is entitled to present this question to the trier of fact at trial.

 The defendant's contention that the evidence outlined above shows no more than negligence on the part of the union and that union negligence in failing to file an appeal does not constitute a breach of the duty of fair representation, *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir. 1975), is not sufficient to allow the court to grant summary judgment. In *Cannon* the Court of Appeals said that "the plaintiff must show that the union's conduct was intentional, invidious and directed at [a] particular employee." *Cannon, supra* at 293.

Since the court does not believe that the evidence in this case is only susceptible to the conclusion that the union's failure to file a timely appeal was "an act of neglect or the product of a mistake in judgment," *Cannon, supra* at 294, the motion for summary judgment will be denied.