**Emanuel WILLIAMS, Plaintiff,**

v.

**WESTERN ELECTRIC COMPANY, INC., Hawthorne Works and International Brotherhood of Electrical Workers, Local Union 1859, Defendants.**

No. 79 C 5116.

United States District Court,
N. D. Illinois, E. D.

Dec. 30, 1981.

Harvey Melinger, Chicago, Ill., for plaintiff.

Charles C. Jackson, Donald Carr, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Plaintiff Emanuel Williams brings this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. He alleges that defendant International Brotherhood of Electrical Workers, Local Union 1859, breached its duty of fair representation and defendant Western Electric Co. breached the collective bargaining agreement because they negotiated a modification of the agreement. This modification allegedly discriminates against a numerical minority of the Union's membership. The Company and the Union have moved for summary judgment. For the reasons given below, the court grants the motions.

### Factual Background

For a number of years, the Company and the Union had an agreement to compensate qualifying piecework jobs with wage supplements over and above the employee's hourly salary. The number of supplement-paying jobs at the Company's Hawthorne Works has declined over the years, however, from 9,000 in 1958 to approximately 1900 in November of 1977.[1]

Faced with this bleak prospect, the Union and the Company agreed to negotiate concerning the elimination of the supplement jobs. A "buyout" was proposed, by which the Company would make certain lump sum payments to employees who held supplement jobs or were assigned a "Control Supplement Rate,"[2] in exchange for the elimination of all wage supplements.

Originally, the Union proposed that employees assigned Control Supplement Rates but not presently holding a supplement job and employees currently holding supplement jobs should all be compensated according to the same formula.[3] The Company, however, rejected this proposal. The Company's final offer provided that employees currently holding supplement jobs would have their lump sum settlement calculated by a formula based on the supplement rate and the employee's age, while employees assigned a Control Rate but not presently holding a supplement job would receive a flat settlement of $480.00.

The Company argued that, given the paucity of supplement jobs, the chances were minimal that any employee not currently holding a supplement job would ever be able to transfer to one and, therefore, that the loss of a merely hypothetical right to transfer to a supplement job, if one became available, should be compensated less than the loss of a current supplement job. The Company's final offer was submitted to the union membership and it was ratified by a large majority.

Plaintiff Williams had over twenty years experience with the Company. He had a Control Supplement Rate of $0.49 per hour. Until April, 1977, he held a supplement job, but at that time his job was discontinued. The Company informed him that there were no other supplement jobs available and offered him a non-supplement job, which Williams reluctantly accepted. In the next year and a half, the Company offered Williams several supplement jobs, but the supplement rates for these jobs were either $0.04 or $0.07 per hour, well below Wil-

---

1. Union President Young Dep. at 103. Moreover, in the fall of 1977, the Company anticipated that an additional 1200 supplement jobs would shortly be discontinued.

2. Only employees hired before September, 1960, were assigned Control Supplement Rates. These rates set a ceiling for the supplement an individual employee could receive. The supplement an employee with a Control Rate actually received was the lower of his Control Rate or the supplement assigned to the job. Young Dep. 19–24.

3. Young Dep. at 67–68.

liams's Control Supplement Rate, and he turned them down.[4]

The preceding are the undisputed facts in this case, as set out in the pleadings, affidavits and depositions on file after the close of discovery.

*The Company's Motion for Summary Judgment*

The gist of Williams's complaint is that because his supplement job was discontinued prior to the negotiation of the Buyout Agreement, he was not treated as favorably as those whose supplement jobs were to be terminated within the near future, but had not yet been terminated at the time of the buyout.[5] Williams alleges that, by not negotiating similar treatment for those in his position[6], the Union breached its duty of fair representation.

■ Assuming, *arguendo*, that the Union did breach its duty of fair representation, Williams has not alleged any facts on which the Company could be found liable. He attempts to base the Company's liability on the allegation that "the Company negotiated a settlement which did not provide for fair or equal payment to members of a minority faction of the Union." Amended Complaint, ¶ 16. But this case, where the Company's only "misconduct" is negotiating with the Union, is governed by *Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1349 (7th Cir. 1978).

In *Battle*, the plaintiffs argued that the union's negotiation of a modification terminating benefits under the collective bargaining agreement was a breach of its duty of fair representation, that the company acquiesced in this misconduct, that the modification was void, and that consequently the company's failure to pay benefits in accordance with the original contract constituted a breach of the collective bargaining agreement. The Seventh Circuit rejected this argument and framed the issue as whether, assuming union misconduct, this supported a claim against the employer. The Court held that it did not and affirmed the summary judgment in the company's favor, stating the following rule:

"We believe that ... the employer cannot be held liable for the retroactive monetary relief when it relies in good faith on union actions or representations that are not obviously outside the scope of its authority."

Here, as in *Battle*, Williams has not suggested any bad faith on the Company's part, and the Buyout Agreement is not patently invalid so that its ratification would obviously be outside the scope of the union's authority.[7] Thus, under the rule in *Battle*, Williams cannot recover from the Company.[8]

The court notes that Williams chose not to respond to the Company's motion and interprets this as an implicit acknowlegment of the appropriateness of summary

---

4. When Williams was transferred to the non-supplement job, the Company paid him a cushioning or rate protection allowance equal to his Control Supplement Rate. He continued to receive this allowance until the collective bargaining agreement expired in 1980, and as a result of the renegotiation of that agreement, he will continue to receive this allowance until 1983. Williams Dep. at 268–70.

Had Williams accepted the $0.07 supplement job when it was offered to him, he would have received a larger settlement under the Buyout Agreement. Affidavit of S. Lawlor.

5. There is nothing in the record to suggest that the Company terminated Williams to avoid paying him a larger settlement.

6. Williams's motion for class certification was denied by earlier order of this court, after finding that although it appeared there was a group

of similarly situated individuals, they did not satisfy the numerosity requirement. Williams has not sought to add any other individual plaintiffs.

7. *Cf. Steele v. Louisville & Nashville Railway*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (contract provisions sought by union were racially discriminatory on their face).

8. Moreover, Williams has not established any basis for voiding the Buyout Agreement. The Union's breach of its duty, assuming there was one, may render the Union liable but it does not destroy the validity of a contract arrived at by arm's length bargaining between the Company and the Union, at least under the circumstances of this case. See p. 484, *infra*.

judgment in the Company's favor. Accordingly, the motion is granted.[9]

*The Union's Motion for Summary Judgment*

The Union has urged two bases for granting summary judgment in its favor. It argues that it is entitled to summary judgment because Williams failed to exhaust the internal union appeals procedure before bringing his breach of duty action. Alternately, the Union argues that Williams has failed to allege any facts that would show a breach of the duty of fair representation. As the court finds merit in both these arguments, it grants the Union's motion.

*Failure to exhaust internal union remedies*

[2] In the recent case of *Clayton v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981), the Supreme Court addressed the following issue:

"whether, and in what circumstances, an employee alleging that his union breached its duty of fair representation . . . must also attempt to exhaust the internal appeals procedure established by his union's constitution before he may maintain his suit under § 301."

The Supreme Court held that, where the internal union procedures cannot award the complainant the complete relief he seeks, exhaustion is not required prior to bringing a § 301 action. *Id.* at 2093.

Williams argues that exhaustion is not required here because part of the relief he seeks is that the Buyout Agreement be declared void as to him and others in his position, and the intra-union procedures could not accomplish this.

The court rejects this argument for several reasons. First, Williams has not alleged any facts justifying a declaratory

judgment that the Buyout Agreement is void. He has not alleged fraud, duress, mutual mistake or any of the traditional theories for holding a contract void. His argument is that the Agreement is void because, in negotiating it, the Union breached its duty of fair representation, but this is not a sufficient reason to hold the Agreement void. In *Humphrey v. Moore*, 375 U.S. 335, 353, 357, 84 S.Ct. 363, 373, 376, 11 L.Ed.2d 370 (1964), Justice Goldberg, in a concurring opinion joined by Justice Brennan, stated:

"Where the alleged breach of a union's duty involves a differentiation based on a relevant classification—in this case seniority rankings following an amalgamation of employee units—and where the employer has not wilfully participated in the alleged breach of the union's duty, the collective bargaining agreement should not be open to the collateral attack of an individual employee merely because the union alone has failed in its duty of fair representation."

Applying this principle to the present case, the Buyout Agreement is not void, even though the Union were found to have breached its duty to Williams.

Moreover, a declaration of voidness is not necessary for Williams to recover the settlement to which he claims he is entitled. In *Battle v. Clark Equipment Co.*, 579 F.2d 1338 (7th Cir. 1978)[10], the plaintiffs argued that exhaustion is not required because the union remedies could not give them all the relief they sought, which included a declaration that the modification of the collective bargaining agreement was void and the restoration of the plaintiffs' rights under the original contract. The Seventh Circuit stated:

"Although this technically may be true, the contract rights in question consist solely of [the employees'] claimed entitlements to receive monetary payments of a

---

9. Alternately, summary judgment in the Company's favor is appropriate due to Williams's failure to exhaust the available internal union procedures. *See Tinsley v. United Parcel Service, Inc.*, 665 F.2d 778 (7th Cir. 1981).

10. Although the *Battle* case was decided before the Supreme Court rendered its decision in *Clayton, supra*, the Seventh Circuit's reasoning and holding are consistent with the later opinion.

determinable amount. Since it is not contested that the intra-union appeal procedures provide for the awarding of monetary damages in appropriate cases, it is clear that [the employees] can be made whole within the context of the intra-union machinery. Moreover, if the union is incapable of offering the [employees] effective relief voluntarily, it is difficult to see how it would be any more capable of doing so pursuant to a court order stemming from a successful showing by the [employees] of a breach of the union's duty of fair representation."

The present case is within the ambit of *Battle* and is distinguishable from *Clayton*, where the plaintiff sought reinstatement and the Court concluded that the union was incapable of accomplishing that unilaterally. Here, although Williams asks the court to declare the Agreement void, such a declaration is unnecessary to make him whole. Counsel for the Union has represented to the court that Williams could have received an increased settlement through intra-union procedures, assuming he prevailed on his claim, and Williams has not challenged this representation. The court is therefore convinced that, in the circumstances of this case, the Union remedies could provide Williams complete relief and that his failure to exhaust those remedies bars this action against the Union.[11] *See Tinsley v. United Parcel Service, Inc.*, 665 F.2d 778 (7th Cir. 1981).

*Duty of Fair Representation*

On the subject of a union's duty of fair representation the Supreme Court has noted:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. *The mere existence of such differences does*

*not make them invalid.* The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953) (emphasis added). In that case, the union and the employer agreed to include military service prior to employment at Ford in computing an employee's seniority. The complainant argued that this discriminated against him and others like him whose seniority rights were adversely affected, but the Court found no breach of duty by the union.

In a case similar to the one before the court, where discrimination against a minority of the union membership is charged, the Seventh Circuit has set out the standard by which a court must judge the union's conduct:

"the union cannot carry out the majority will at the expense of the minority if to do so would be arbitrary, discriminatory or in bad faith."

*Alvey v. General Electric Co.*, 622 F.2d 1279, 1289 (7th Cir. 1980). The Seventh Circuit has further stated:

"To prove arbitrary or discriminatory treatment, the plaintiff must show that the Union's conduct was intentional, invidious and directed at that particular employee." [12]

*Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir. 1975).

■ Applying these principles to the instant case, the court concludes that Williams has not alleged anything more than disparate treatment of different classes of employees. As *Huffman* indicates, in the negotiating context this is not sufficient.

---

11. Williams did file a grievance pursuant to the collective bargaining agreement, but this is a separate procedure from the intra-union appeal procedure and the parties appear to agree that it was not the appropriate means for challenging the Union's actions in negotiating the Buyout Agreement.

12. In the circumstances of this case, the last requirement is that the Union's conduct was directed at that particular group of employees who lost their supplement jobs prior to the agreement.

There is nothing in the record to indicate bad faith on the Union's part and Williams has not shown that the Union's conduct was arbitrary or discriminatory, i.e., intentional, invidious and directed at the particular group to which Williams belonged. The unrebutted testimony of the Union's president is that the Union originally requested the relief Williams now seeks, that the Company refused to agree to the Union's position, and that a compromise was negotiated between the parties.

Although the Union certainly had a duty to fairly represent the positions of all employees, "in the final analysis, the collective interests must remain paramount." *Alvey, supra,* 622 F.2d at 1289, quoting approvingly *Tedford v. Peabody Coal Co.,* 533 F.2d 952, 957 (5th Cir. 1976). In this case, the Union sought concessions from the Company, which was under no obligation to grant them. The Company could have simply phased out the supplement jobs. The Union's conduct in giving up some of its demands to insure benefits for a large portion of its membership falls within the "wide range of reasonableness" that the Supreme Court has granted unions engaged in negotiations.

*Barton Brands, Ltd. v. NLRB,* 529 F.2d 793 (7th Cir. 1976), cited by Williams, does not support his position. In that case, which involved conflicting seniority rights between two employee units that had been amalgamated, the Seventh Circuit stated:

> "[A union's] decisions may not be made *solely* for the benefit of a stronger, more politically favored group over a minority group. To allow such arbitrary decision-making is contrary to the union's duty of fair representation...."

*Id.* at 798–99.[13] However, the Seventh Circuit also stated:

> "[T]o be absolved of liability the Union must show some objective justification for its conduct beyond that of placating the desires of the majority of the unit employees at the expense of the minority."

*Id.* at 800. As the Union has shown an objective justification for its conduct—the desire to compensate its membership for the impending obsolescence of supplement jobs—there is no liability on the Union's part.

In summary, solely as a consequence of declining economic conditions, Williams lost his supplement job. In all likelihood, a comparably rated job would not become available. In the process of arm's length negotiations, the Union yielded to the Company's position that Williams's possibility of getting such a job is not equivalent to actually holding such a job and should not be compensated at the same rate. The court finds in such circumstances no breach of the Union's duty of fair representation.

### Conclusion

Western Electric's motion for summary judgment is granted on the grounds that Williams has not alleged facts establishing any breach of the collective bargaining agreement. The court, however, declines to award Western Electric attorneys' fees and costs. The Union's motion for summary judgment is also granted, on the alternate grounds of failure to exhaust intra-union remedies and failure to allege facts constituting a breach of the duty of fair representation.

---

13. This decision has been criticized for blurring the distinctions between union conduct in negotiations and union conduct in prosecuting grievances. *See* F. C. Leffler, "Piercing the Duty of Fair Representation: The Dichotomy Between Negotiations & Grievance Handling," 1979 U.Ill.L.F. 35, 47–49.