### LEVER BROTHERS COMPANY, Plaintiff,

v.

### OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION AFL–CIO, LOCAL NO. 7–336, Defendant.

#### Civ. No. H80–117.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 19, 1983.

Joel C. Levy of Singleton, Levy, Crist & Johnson, Highland, Ind., for plaintiff.

Barbara J. Hillman of Cornfield & Feldman, Chicago, Ill., for defendant.

## ORDER

MOODY, District Judge.

On December 7, 1979, a mutually agreed upon arbitrator rendered his decision awarding backpay at overtime rates to certain regular employees—also members of the Union [1]—who were both capable and available to perform work which the Company [2] had contracted-out to an independent contractor on April 14, 1978. The Company, on March 5, 1980, applied in this Court to have the arbitrator's award vacated. The Company's motion advances three grounds upon which the motion to vacate should be granted: 1) the arbitrator exceeded his authority by substituting his own discretion for that of the Company; 2) the arbitrator modified the terms of the collective bargaining agreement (CBA); and, 3) the arbitrator wholly disregarded the evidence and his decision is contrary to the evidence presented at the arbitration proceeding. Both the Company and the Union have motioned for summary judgment,[3] waiving oral argument, choosing instead to rely upon the written briefs filed in support of their motions for summary judgment. Other than these cross-motions for summary judgment, the only outstanding motion is the Union's recent motion for leave to cite additional authority. This latter motion is GRANTED and the Court proceeds to rule upon the cross-motions for summary judgment, for no questions of fact remain to be determined.

The parties agree that contracting-out is arbitrable, however, their agreement dissipates with mention of the breadth of the arbitrator's authority permitted under the CBA. The Company argues that contract-

---

1. Union refers to Local No. 7–336, The Oil, Chemical, and Atomic Workers International Union AFL–CIO.

2. Company refers to Lever Brothers Company.

3. The Union's motion for summary judgment requests attorney fees. The Company seeks to set aside the arbitrator's award.

ing-out, solely a function of management under the CBA, though a proper issue for arbitration, is an arbitrable issue nonetheless confined to inquiry into the procedure which the Company followed to arrive at its decision to contract-out. The Company further argues that this limited inquiry translates into limitations on the arbitrator's authority—limitations which preclude the arbitrator from reviewing the Company's business judgments which underlie the Company's decision to contract-out or not to contract-out particular work. In contrast, the Union argues (and the arbitrator agreed), that the arbitrator's authority extends to an inquiry into the reasonableness of the Company's business judgments which in turn led the Company to its decision on contracting-out. The arbitrator interpreted the CBA provisions relevant to contracting-out as well as explanatory passages in the Blue Book of Letters.[4] His interpretation of these provisions[5] was that the Company had manifested an intention to use regular employees for all work within the plant that the regular employees were capable of performing unless one or more of four enumerated factors[6] justified the decision to contract-out particular work to an independent contractor. The arbitrator's reasoning leads naturally to the conclusion that the procedure followed by the Company as well as the substantive justifications for the Company's decision are issues within the arbitrator's authority.

■ At this juncture, the Court must mention that its own scope of review in this case is circumscribed. Since 1960 judicial review of arbitration awards has been limited. The Supreme Court's decision in three cases, now characterized as the *Steelworker's Trilogy*,[7] established that the court's inquiry is not a review *de novo,* rather, its review is confined to the narrow questions of whether the award "draws its essence from the collective bargaining agreement" and whether "the arbitrator's words manifest an infidelity to this obligation." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).

■ Expanding on these questions, subsequent cases cited by the Court of Appeals for the Seventh Circuit in *Amoco Oil Company v. Oil, Chemical and Atomic Workers, Etc.,* 548 F.2d 1288 (7th Cir.1977), explain that "an arbitrator's award does 'draw its essence from the collective bargaining agreement' so long as the interpretation can in some rational manner be derived from the agreement, 'viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.' " *Id.* at 1294, *citing, Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123 (3rd Cir.1969). The courts are to give the arbitrator the deference this standard of review mandates because "[i]t is the arbitrator's construction which was bargained for." Thus, it follows that where the parties have bargained for the arbitrator's construction, and where he does just that, "the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1361 *quoted in Mogge v. District 8, International Ass'n of Machinists,* 454 F.2d 510, 513 (7th Cir.1971). But, the foregoing is predicated on a bar-

---

**4.** The Blue Book of Letters is a document which supplements the CBA. Its principle purpose is to clarify ambiguous or misunderstood provisions in the CBA.

**5.** The provisions are set out in the appendix.

**6.** The four enumerated factors are: (1) available qualified manpower within the plant; (2) available equipment; (3) required completion date of the job in question; (4) cost as com-

pared to having the same work done by outside contractors.

**7.** *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

gain for the arbitrator's construction. The Court of Appeals for the Seventh Circuit recognized as much when in *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290 (7th Cir.1975), it enumerated five circumstances where a court may properly set aside an arbitrator's award. *Id.* at 295. Of the five circumstances enumerated in *Cannon,* three have possible relevance to this case: (1) if the grievance is not arbitrable;[8] (2) if the arbitrator exceeds his contractual authority;[9] and, (3) if the arbitrator's decision is arbitrary or capricious.[10] Thus, the Court's task is clear—if, after examining the instant case, the Court finds that none of these circumstances which permit the Court to set aside the arbitrator's award is present, the Court must affirm even if its interpretation might have differed from that of the arbitrator, *United Steel Workers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960).

▪ The Company points to several clauses of the CBA; clauses, the Company argues, which preclude any inference that the arbitrator possessed the authority necessary to support the award as rendered. First, paragraph 3.4 of the CBA, the Company argues, identifies contracting-out as solely a function, power, and authority belonging to the Company. Second, paragraph 6.1 of the CBA, the Company argues, identifies the determination of when overtime work shall be assigned as a function of the Company. Finally, paragraph 11.10 of the CBA, the Company argues, expressly declares that the arbitrator does not have the power to modify any CBA term, substitute his discretion for the Company's or the Union's, nor exercise any responsibility or function of the Company or the Union.

Paragraph 3.4, the first paragraph the Company points to for support, was interpreted by the arbitrator to manifest an intention by the Company to utilize regular employees on work performed within the plant if all other things were equal. The arbitrator apparently reasoned that the enumeration of factors in the Blue Book not only further manifested this intention but also extended an invitation to the Union, and if necessary an arbitrator, to gauge the reasonableness of the Company's reasons for deciding to contract-out particular work. The Company, nonetheless, argues that the arbitrator's authority is limited to the mechanics of the decision-making process, and that the explanatory material on E–4 and E–5 does not in any way affect its decision-making authority regarding contracting-out particular work. In fact, the Company points out that the final paragraph on page E–5 of the Blue Book says precisely this much. Accordingly, the Company proffers that before the arbitrator's decision as to its right to decide whether or not to contract-out was limited only by mechanical, procedural requirements. After the arbitrator's decision, however, the right became a substantively qualified right, for it is now possible for an arbitrator, at the behest of the Union, to second-guess the Company's business judgment. Thus, the Company submits that the arbitrator transgressed the bounds of his authority expressed in paragraph 11.10 of the CBA—he substituted his discretion for that of the Company when he inquired into the wisdom of the Company's decision to contract out the particular work in question, and having decided that the Company's business judgment was ill-founded, ordered backpay to

**8.** The court cited *Local 81, American Federation of Technical Engineers v. Western Electric Co., Inc.,* 508 F.2d 106 (7th Cir.1974) and *Los Angeles Newspaper Guild Local 69 v. Hearst Corp.,* 504 F.2d 636 (9th Cir.1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87, for this proposition.

**9.** For this proposition the Seventh Circuit cited, *International Ass'n of Machinists, District 8 v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir. 1969), *cert. denied,* 396 U.S. 820, 90 S.Ct. 57, 24

L.Ed.2d 70; *Torrington Co. v. Metal Products Workers Union, Local 1645,* 362 F.2d 677 (2nd Cir.1966).

**10.** For this proposition the Court cites, *Mogge v. District 8, International Ass'n of Machinists,* 454 F.2d 510, 513 (7th Cir.1971), and *Yellow Cab Co. v. Democratic Union Organizing Committee Local 777,* 398 F.2d 735, 737 (7th Cir. 1968), *cert. denied,* 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561.

be paid to certain regular employees who were both capable and available to do the work the Company had contracted-out.

The argument concerning paragraph 6.1 proceeds in the same direction. The paragraph does indeed allocate to the Company the function of determining when overtime shall be worked. The Company argues that since this is a function of the Company, the arbitrator's award cannot withstand even this Court's limited review, because the arbitrator had no authority under paragraph 11.10 to exercise any function of the Company. The arbitrator's award directs the Company to pay certain employees backpay at overtime rates. Implicit in this award, the argument goes, is a usurpation by the arbitrator of the Company's function to determine when overtime will be worked, and consequently, when it will be paid. The arbitrator's award, nevertheless, is not inconsistent with his interpretation of paragraph 3.4—the contracting-out paragraph. The arbitrator evaluated the merits of the Company's reasons for contracting-out and concluded that if cost had been one of the Company's reasons for contracting-out the work, the Company would have designated [11] item Four—cost as compared to having the same work done by outside contractors—as one of its reasons when it informed the Union it had contracted out the particular work in question. Since the arbitrator's award of backpay must rely upon his interpretation of the contracting-out paragraph, the Company argues that his action in disregard of paragraph 6.1 also must be condemned because it substitutes his discretion for that of the Company's contrary to paragraph 11.10's admonition that the arbitrator shall not substitute his discretion for that of the Company.

The third and final paragraph the Company calls attention to is paragraph 11.10 of the CBA. Reference has been made to two clauses of the paragraph which limit the arbitrator's prerogative: (1) he shall not substitute his discretion for that of the Company; and (2) he shall not exercise any responsibility or function of the Company. The Company now makes reference to emphasize a clause which immediately precedes these two. That clause reads: "The arbitrator shall have no power to add to, or subtract from, or modify any of the terms of this Agreement...." This clause is emphasized by the Company to evidence the total disregard the arbitrator had for the bounds of his authority under the CBA. The Company argues that the arbitrator modified and subtracted from the terms of the CBA. More specifically, the arbitrator's disregard of the Company's function to determine overtime was obliterated by the award of backpay at overtime rates. Since the work was required to be performed on weekends when the regular employees capable of performing it would otherwise have been off the Company would have had to determine overtime hours for these employees. Paragraph 6.1 maintains this determination is that of the Company. The arbitrator's reasoning wholly disregarded this term of the CBA. Thus, it subtracts from the CBA. The arbitrator, also, modified paragraph 3.4 by evaluating the reasons advanced by the Company for contracting-out the particular work in question. His evaluation of the Company's reasons subjects the Company's business judgment and consequently its decision to scrutiny impermissible under the CBA. But for the disclaimer agreed upon by both parties to the CBA, the arbitrator's interpretation would not be subject to being set aside by this Court, however, the parties included the disclaimer in the last paragraph on page E-5 of the Blue Book. And, that disclaimer clearly states that "[i]t is completely understood by the Company and the Union that the foregoing applies to the mechanics of applying the principle of 'consideration by the Company of the interests of regular employees' and to the dissemination of the final decision to the Union and in no way

---

11. The Company apparently informed the Union of contracting-out on a standard form. The Company's reasons in a particular instance were designated by placing an "X" adjacent to the numeral and text on the standard form. In this instance, the Company placed an "X" adjacent to reasons two and three, but not adjacent to four.

affects the responsibility of the Company to make the final decision regarding the assignment of work to outside contractors." Quite simply, the arbitrator ignored this paragraph and in so doing subtracted from the CBA between the parties. This he could not do and still remain within the limits of his authority clearly articulated in paragraph 11.10.

█ The Company argues that the arbitrator not only substituted his discretion for that of the Company and assumed a function of the Company but also modified and subtracted from the terms of the CBA to fashion his notion of industrial justice. Arbitration is a contractual matter and hence only matters and issues submitted to arbitration are properly within the authority of the arbitrator. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). *See also International Ass'n of Machinists, District 8 v. Campbell Soup Co.,* 406 F.2d 1223 (7th Cir. 1969); *Torrington Co. v. Metal Products Workers Union, Local 1645,* 362 F.2d 677 (2nd Cir.1966). "[The arbitrator] does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960). The arbitrator had before him a mandate to evaluate the mechanical application of the contracting-out decision. He exceeded this mandate when he proceeded to ignore the overtime prerogative of the Company, substitute his business judgment for that of the Company, and consequently modify the terms of the CBA.

## CONCLUSION

The Court's examination of the instant case reveals that the arbitrator exceeded his authority under the CBA between the Company and the Union. The arbitrator's inquiry was limited by an express term of the CBA to a review of only the mechanics of the Company's decision to contract-out work. By ignoring this express limitation on his scope of review, the arbitrator exceeded his contractual authority. Consistent with the decision in *Cannon,* 524 F.2d 290, 295 (7th Cir.1975) in which it was held that where an arbitrator exceeds his contractual authority a reviewing court may properly set aside an arbitrator's award, the arbitrator's award in the present case is to be set aside.

Accordingly, the Company's Motion for Summary Judgment will be GRANTED and the Union's cross-motion for Summary Judgement will be DENIED.[12] The court further ORDERS that counsel for the plaintiff submit an appropriate form of judgment for the final disposition of this matter within five (5) days from receipt hereof.

---

12. The Union's request for attorney fees is not considered since the Company's motion being granted renders it unnecessary.