**756**

In re DEPARTMENT OF ENERGY
STRIPPER WELL EXEMPTION
LITIGATION.

The HERTZ CORPORATION,
Appellant,

v.

ADMINISTRATOR, INDEPENDENT
RETAILERS OF MOTOR
FUELS GROUP,

and

United States Department of
Energy, Appellees.

No. 10–77.

Temporary Emergency Court of Appeals.

March 22, 1988.

Edward J. Tolchin and John H. Zentay,
Ginsburg, Feldman and Bress, Washington,
D.C., were on the brief, for appellant.

Stephen C. Skubel, with whom Marc
Johnston, Office of Gen. Counsel, Dept. of
Energy, Washington, D.C., and Theodore
A. Miles, Floyd I. Robinson and Edward
Levy, Economic Regulatory Adm'n, Dept.
of Energy, Washington, D.C., were on the
brief for appellees U.S. Dept. of Energy
and John S. Herrington, Secretary of Ener-
gy.

Leland E. Beck and Jerry S. Cohen, Co-
hen, Milstein, and Hausfeld, Washington,
D.C., were on the brief, for appellee,
Adm'r, Independent Retailers of Motor Fu-
els Group.

Before GRANT, METZNER and
PECK, JJ.

GRANT, Judge.

The Hertz Corporation (Hertz), Appel-
lant, has appealed the district court's Order
of July 23, 1987, denying Hertz's motion to
intervene in M.D.L. 378 and petition for
specific relief. A motion to dismiss the
appeal or for expedited consideration of the
merits was filed by Appellees, the United
States Department of Energy and the Ad-
ministrator of the Independent Retailers of
Motor Fuels Group. On January 19, 1988,
this case was placed on the summary calen-
dar of the Temporary Emergency Court of
Appeals. For the reasons stated below, we
grant Appellees' motion to dismiss the ap-
peal.

### I. *Facts*

After several years of complex and pro-
tracted litigation involving alleged viola-
tions of the Department of Energy's (DOE)
price and allocation controls applicable to
crude oil, the parties entered into negotia-
tions seeking a mutually agreeable method
of disbursing the funds collected by the
DOE as a result of the alleged violations.
That effort culminated in the Final Settle-
ment Agreement (Agreement) which was
approved as of May 5, 1986 by the District
Court of Kansas. In re: The Department

of Energy Stripper Well Exemption Litigation. M.D.L. 378.

The Hertz Corporation did not participate in the negotiations leading to the Agreement. It had assumed, erroneously as it turned out, that Hertz would be classified as a Retailer.

The parties to the Agreement, all entities which became signatories thereto, included the DOE, the 50 sovereign States of the United States, and seven categories of other participants in the program. Funds in the M.D.L. 378 Escrow account were segregated into nine separate escrow accounts.

The "Order Approving Independent Retailers of Motor Fuels Group Administration and Trust Agreement" (D.Kan. Dk. No. 872, August 7, 1986) (Retailers Order) authorized the Administrator thereof to advertise the settlement of M.D.L. 378; to determine the validity of all claims against the Retailer fund; to determine the proportionate share of the Escrow fund due them; and to report to the Court.

On February 3, 1987, the Hertz Corporation filed a claim for 541,860,127 gallons which, after review of the claim and supporting documents, the Administrator rejected on the ground that Hertz was not a retailer as that term was used in the Retailers Order and the Final Settlement Agreement.

Pursuant to paragraph 15 of the Retailers Order, Hertz appealed this decision to the court-appointed arbitrator, Professor John J. Flynn of the University of Utah College of Law, whose appointment was provided for in the Retailers Order "to resolve claims rejected in whole or in part which are disputed by the claimants."

Paragraph 15 of that order provided:

Within fifteen (15) days of receipt of notice of rejection of a claim in whole or in part, each claimant who disputes such rejection or modification of claim shall so notify the Administrator in writing. The arbitrator shall receive all such disputed rejections or modifications of claims. The Arbitrator may contact the disputant and make whatever supplemental inquiry or require the production of whatever supplemental information the Arbitrator shall in his sole discretion demand. The Arbitrator shall determine all matters in dispute within seventy (70) calendar days after referral of disputed claim by the Administrator. *The Arbitrator's determination shall be immediately communicated in writing to the Administrator and the disputing claimant and shall be final and binding upon the Administrator and the disputing claimant. The Arbitrator shall not be required to hold a hearing....* (Emphasis added).

Although not required to do so, the Arbitrator, at Hertz's request and without opposition by the Administrator, held a hearing on the Hertz claim. Following the hearing, the Arbitrator affirmed the Administrator's rejection of the claim in an opinion containing the following language:

While the Arbitrator of the retailers escrow can not determine who is eligible for other funds established by the Settlement, it would appear that Hertz and other car rental companies are end users of motor fuel in the context of the business they operate and in the context of the Settlement. There is currently a motion filed by several States pending before the Court concerning DOE's administration of Subpart V of the Settlement. It would appear that a similar appeal to the Court under Subpart V by this claimant and others similiarly situated, if not time barred, would be appropriate even though they may be required to prove under Subpart V the degree to which they were injured by any alleged overcharge. This claimant ran that risk when it did not make its presence known and advance the merits of its claims during the original negotiations, even though Counsel for Hertz admitted that they were aware of the Stripper Well litigation and the settlement negotiations. To the extent that claimant's forbearance from participating in those negotiations was based on an assumption about the effect of DOE rulings holding car rental companies were retailers for purposes of other laws and settlements, their non-action at that time may be un-

derstandable. To the extent that misfortune is being relied upon to require the Administrator of the retailers escrow to include Hertz as eligible for the retailers fund, it is misplaced.

Arbitrator's Decision, Claim No. 25,990, The Hertz Corporation (June 1, 1987) at 12.

Thereafter, Hertz filed with the District Court a "Motion for Leave to Intervene for the Limited Purpose of Enforcing Settlement Order," and also a "Petition by The Hertz Corporation to Enforce Settlement Order." Dk. No. 1160, 1161 and 1162. D.Kan. June 15, 1987.

Finding that Hertz had not exhausted its remedies under the Subpart V provisions of the Settlement Agreement, the District Court denied Hertz's Motion on July 23, 1987, stating:

> ... binding arbitration provisions of the Settlement Agreement preclude appeal to this Court absent the most compelling circumstances.

Hertz has sought review of that district court Order; Appellees have moved this court for an order dismissing Hertz's appeal under Rule 25(a) of the General Rules of the Temporary Emergency Court of Appeals, which states that an appeal that "is frivolous and entirely without merit" will be dismissed. According to the Government and the Administrator, Hertz's appeal is frivolous because its only allegation was that the Arbitrator's decision is wrong: Hertz did not allege improprieties in the arbitration process or right to a refund outside that process. Hertz responds that the court must review the arbitrator's decision and must determine in which category Hertz falls so that Hertz can be reimbursed from one escrow fund or another.

█ This court finds that the provisions of the settlement agreement unequivocally establish dispute resolution procedures. Because no compelling justification has been presented to this court by which we could find cause to review those procedures, we now dismiss the appeal as frivolous and without merit.

## II. *Discussion*

█ Arbitration procedures to address the grievances of claimants under a contractual agreement [1] (whether it be a settlement agreement, as herein, or a collective bargaining or other type of agreement) are established by the parties as a system of private law under which the arbitrator's determination is final and binding on the parties. In the Steelworkers Trilogy, the Supreme Court praised this "system of industrial self-government" and refused to permit judicial review of the merits of a dispute settlement by an arbitrator. *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In the *Warrior & Gulf Navigation* case, the Court reviewed the role of an arbitrator, a person chosen for his trusted personal judgment:

> "A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties...."

Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv.L.Rev. 999, 1016, cited in *Steelworkers v. Warrior & Gulf*

---

1. Hertz has asserted that it is not bound by the arbitration decision because it was not a party to the Final Settlement Agreement. However, it was required under the Agreement that all persons submitting claims under the Agreement also submit releases. (Retailers Order, ¶¶ 4(c), 12.) Hertz did provide the proper Claim Form and Release. Part VI, ¶ A of the Agreement mandates that the Agreement's provisions "shall be binding upon (1) all the Parties hereto and (2) *all Persons executing waivers or releases pursuant to this Agreement....*" Therefore Hertz became bound by the Agreement upon its execution of the Claim Form and Release.

*Navigation,* 363 U.S. at 581, 80 S.Ct. at 1352.

The Retailers Order, an integral part of the Settlement Agreement, mandated resolution of disputed claims through the arbitration process. The grievance brought to the Arbitrator by Hertz was the Administrator's rejection of Hertz's claim because Hertz was not a "retailer" as defined by the Agreement.

A dispute about the meaning and application of the Agreement terminology is precisely the type of grievance which the parties agreed would be determined by arbitration. (Retailers Order, ¶ 15.) As such, it is a question for the arbiter, not the courts. 363 U.S. at 588, 80 S.Ct. at 1356.

In the Steelworkers Trilogy, the Supreme Court made clear the narrow role of courts when arbitration is established as the vehicle for handling disputes arising under an agreement.

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

*Steelworkers v. American Mfg. Co.,* 363 U.S. at 567–68, 80 S.Ct. at 1346–47.

Judicial review of the merits of a complaint "would make meaningless the provisions that the arbitrator's decision is final."

> [T]he question of interpretation of the ... agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 599, 80 S.Ct. at 1362.

It has long been held that a contractual agreement containing a binding arbitration provision precludes judicial review of the arbiter's determination absent compelling circumstances. *See, e.g., Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 294–96 (7th Cir.1975). Hertz has not presented to this court any allegations of the Arbitrator's prejudice, his abuse of power or his disregard or misapplication of controlling law. There has been no evidence of unfairness or impropriety that would cause us to review the merits. His decision is final as long as he interprets and applies the terms of the agreement in making his decision.

> When an arbitrator is commissioned to interpret and apply the ... agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the ... agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the ... agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. *See also, e.g., Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2nd Cir.1978); *Cannon v.*

*Consolidated Freightways Corp.*, 524 F.2d at 294–96; *Amalgamated Meat Cutters & Butcher Workmen v. Cross Bros. Meat Packers, Inc.*, 518 F.2d 1113 (3rd Cir.1975).

The Arbitrator herein has complied with these requisites. Although not required to do so, he conducted a hearing on the Hertz claim before issuing his decision.[2] His affirmation of the Administrator's denial of Hertz's claim was based upon a careful and thorough interpretation of the Agreement and analysis of the parties' intentions in light of the claimant's dispute. The Arbitrator performed his responsibilities with exemplary care and judgment. There is no hint of extraordinary circumstances suggesting the need for judicial review.

Finding, therefore, that the question being determined in this case is appropriate for the arbiter and not for the courts, and further finding that the Arbitrator herein fully upheld his obligation, we refuse to review the merits of the Arbitrator's decision and hold that it is final and binding on the parties. Accordingly, we grant the motion of the DOE and the Administrator to dismiss Hertz's appeal.

SO ORDERED.

---

**2.** At the arbitration hearing, the Arbitrator considered whether Hertz's claim could be heard in another forum. Mr. Beck, counsel to the Administrator, described the purpose of the Department of Energy's Subpart V Proceedings and recommended that Hertz, as a final user, seek restitution there. Hertz has argued that following the procedures required by Subpart V for relief as an end user would be a useless gesture because of prior rulings by DOE that car rental companies are retailers. Hertz having chosen not to follow this procedure, this court does not have before it for review any definitive findings or determinations by the agency. Therefore, the issue of Hertz's eligibility under Subpart V is not before the court.