**In re DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.**

**APEX OIL COMPANY, Appellant,**

v.

**RESELLER SETTLEMENT ATTORNEY, Appellee.**

No. 10–75.

Temporary Emergency Court of Appeals.

July 14, 1988.

Joseph W. Kennedy, Morris, Laing, Evans, Brock and Kennedy, Chartered, Wichita, Kan., was on the brief for appellant.

Alphonse M. Alfano, Robert S. Bassman and Douglas B. Mitchell, Bassman, Mitchell and Alfano, Chartered, Washington, D.C., were on the brief for appellee.

Before GRANT, METZNER and PECK, Judges.

GRANT, Judge.

Appellant Apex Oil Company (Apex) has appealed the district court's Opinion and Order of August 27, 1987, denying Apex's Motion for an Order Clarifying Prior Orders of the Court and for Other Relief. Appellee the Reseller Settlement Attorney has filed Motion to Dismiss the Appeal pursuant to TECA Rule 26 on the ground that Apex had already presented its claim for final and binding arbitration and had waived its right to appeal. On January 19, 1988, this case was placed on the summary calendar of the Temporary Emergency Court of Appeals.[1] For the reasons set forth below, we grant appellee's Motion to Dismiss the Appeal.

## I. *Facts*

By its Order of July 7, 1986, the United States District Court for the District of Kansas approved the Final Settlement Agreement that culminated the multi-district litigation identified as Department of Energy Stripper Well Litigation (M.D.L. 378).[2] Under the terms of the Agreement, nine separate escrow accounts were established for distribution of funds to entities entitled to claim under the Settlement. The case presently before us involves the Refiners and Resellers Escrow Accounts.

Apex did not participate in the Stripper Well litigation or in the negotiations leading up to the Final Settlement Agreement; however, it was a participant in the Entitlements Program.[3] Since the Refiners Escrow was divided among all Entitlements Program participants, Apex was eligible to receive a share of those funds as compensation for overcharges on foreign petroleum purchases.

On March 21, 1986, Apex signed the "Refiners Signature Page to M.D.L. 378 Settlement Agreement" as a Refiner ratifying and adopting the Settlement Agreement in order to become a Party to the Settlement Agreement. On May 2, 1986, Apex executed a "Release of Claims" waiving all claims as defined in that document, and on May 5 it signed the Settlement Agreement and Supplemental Agreement for Refiners Escrow. It then received $13,873 as a buyer recipient and $8,359 as a general recipient from the Refiners Escrow, and was relieved of $73,921.50 in entitlements obligations. Apex's wholly-owned subsidiary, Clark Oil & Refining Company, executed the same documents and received $4,580,-559 as a seller recipient.

After receiving its share of the Refiners Escrow, Apex signed the Resellers Verification Waiver and Release and submitted a claim to the Resellers Settlement Administrator. The Administrator denied Apex's claim on the ground that Apex had already participated in the Settlement as a Refiner

---

1. On December 24, 1987, Apex Oil Company filed voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of Missouri, Eastern Division. (Case No. 87–3804–BKS–BSS). This court was notified of the Apex bankruptcy on January 15, 1988. On May 12, 1988, the Bankruptcy Court issued an "Order Declaring that the Automatic Stay in Bankruptcy Does Not Stay the Appeal of Appeal No. 10–75 in the Temporary Emergency Court of Appeals of the United States of America Pertaining to *In re The Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378." On May 24, 1988,

the Reseller Settlement Attorney sent notice to this court of the Bankruptcy Court's Order.

2. *In re Department of Energy Stripper Well Exemption Litigation*, 653 F.Supp. 108 (D.Kan. 1986).

3. Congress enacted the Entitlements Program during the Arab oil embargo to regulate the oil industry and to ameliorate the oil price control problems. For an explanation of the Entitlements Program, see *Texaco, Inc. v. Department of Energy*, 604 F.Supp. 1493, 1495–6 (D.Del. 1985).

and thus was precluded, under paragraph 8 of the Resellers Order,[4] from claiming as a Reseller. Instead of seeking review of that determination by appeal to the independent Referee as established in the Agreement and as delineated by the Administrator's letter, Apex challenged the Administrator's decision by bringing a motion for declaratory and injunctive relief before the district court.[5] However, the court denied Apex's motion and remanded the claim to the Resellers Independent Referee, stating: "If Apex indeed desires to claim as Reseller, it must follow the review procedures applicable to all other Resellers, and it must abide by the Resellers Verification Waiver and Release which it signed." Opinion and Order of May 19, 1987, at 6–7.

The court-appointed Referee allowed full briefing and oral argument concerning Apex's claim as a Reseller. On July 29, 1987, it concluded that the Reseller Administrator properly denied the claim: "[S]ince Apex is a Refiner as defined by the Settlement Agreement and received money as such, it is not eligible under the Court's Order to claim as a Reseller." Referee's Decision at 4.

Following this decision by the Referee, Apex sought to appeal its claim to the District Court by filing a "Motion for Clarification of Court's Prior Orders and for Other Relief." In response to that Motion, the court ruled:

> Once again, the Court reaffirms that, according to Paragraph 16 of the Resellers Order, "[t]he decisions of the Referee on such challenges shall be final and binding on the claimant and shall not be subject to further review...." The Court refuses to review the decision of the Referee under the guise of "clarification." Therefore, the Court shall deny Apex's motion for clarification and other relief.

**4.** Paragraph 8 of the Resellers Order defines "Resellers" as "all independent marketers and distributors" except those companies or entities which are "more than forty-nine (49) percent owned or controlled by: (1) a Refiner...." Resellers Order at ¶ 8(a)(1).

**5.** In the notice denying Apex's claim, the Administrator gave Apex fifteen days in which to chal-

Memorandum and Order of August 27, 1987 at 2–3.

Apex is now seeking review of that district court decision. At the same time, the Reseller Settlement Attorney has moved the court for an order dismissing the appeal. He asserts that the Final Settlement Agreement establishes Referee review as the "sole and exclusive recourse" for challenging eligibility determinations, and that Apex waived its right to "seek review of or appeal" final decisions of the Referee.

## II.  *Analysis*

The Settlement Agreement and the Order Establishing Resellers Escrow (Resellers Order), appended thereto, set forth both the criteria for those that would claim against the Resellers Fund and the procedures under which the Administrator's determination of a claimant's eligibility may be reviewed.

The Order authorizes the Administrator to "determine the eligibility of Reseller claimants to participate in this Settlement." Resellers Order at ¶ 5(a). Claimants wishing to challenge the Administrator's determination must follow the review procedures set out in paragraph 16 of the Order:

> ... Any claimant who wishes to challenge the disapproval of his claim must notify the Administrator of that intent no later than 15 days after receiving notice that the claim has not been approved. All claimants who wish to challenge the disapproval of their claims shall be accorded the opportunity to submit written objections to the disposition of their claim to the independent Referee who shall be empowered to reverse the determinations of the Administrator on questions of eligibility....

lenge the disapproval of its claim through the administrative procedures established in the Resellers Order. Apex did not follow that procedure. Nor did it take advantage of the time extension given by the Administrator six weeks after his denial of the claim. Instead, Apex filed a motion for relief with the district court seeking a reversal of the Administrator's determination.

Paragraph 16 makes clear that claimants were required to agree to this method of binding administrative dispute resolution before they could file claims under the Settlement:

As a condition to participating in the Settlement of this matter and filing a claim pursuant to this Order, each claimant shall agree to accept the final decision of the Referee as its *sole and exclusive recourse* for disputes or controversies under this Settlement. The *decisions of the Referee on such challenges shall be final and binding on the claimant and shall not be subject to further review* and, as a condition to filing a claim under this Settlement, the claimant *must waive any right to appeal or otherwise challenge* the final decisions of the Referee on challenges to decisions made by the Administrator.

Resellers Order at ¶ 16 (emphasis added).

Apex agreed to these conditions twice. Apex's President, P.A. Novelly, signing as a "Refiner" the Refiners Signature Page to M.D.L. 378 Settlement Agreement on March 21, 1986, "hereby ratifie[d] and adopt[ed] the Settlement Agreement." Apex's Secretary, Robert W. Ziha, signed the Resellers Verification Waiver and Release on November 28, 1986, in verification of the Apex claim upon the Resellers Fund. That verification contained the following language:

4. The claimant understands that its exclusive right to seek review of any decision of the Administrator is by appeal to the Referee, that the decisions of the Referee on all matters shall be final and binding on the claimant and shall not be subject to further review and, as a condition to filing a claim under this Settlement, the claimant must waive any right to seek review of the final decisions of the Referee on challenges to the decisions made by the Administrator; ....

The concluding paragraph of that document signed by the Secretary of Apex is an explicit waiver:

13. The claimant waives any right to seek review of or appeal final decisions of the Administrator except by appeal to

the Referee and waives any right to seek review of or appeal final decisions of the Referee on challenges by the claimant to decisions made by the Administrator.

Apex failed to pursue the administrative remedies set out in paragraph 16 of the Order, including the right to file written objections. Rather, on February 27, 1987, appellant filed a motion with the District Court for declaratory and injunctive relief. In remanding the case to the Referee, the court stated:

The case is hereby ordered remanded to the Referee. Because Apex chose the wrong forum in which to argue its eligibility, and thereby failed to file written objections to the Administrator's determination, Apex should be afforded the opportunity to file those objections in advance of the Referee's review.

The Referee's reconsideration of the Apex claim was thorough. He permitted briefs by the parties and oral argument, allowance of which was exceptional: "Upon a showing by the claimant of compelling need, the Referee may convene an oral hearing on the record if he, in his sole discretion, deems such a hearing to be essential." Resellers Order at ¶ 16. Following his review, the Referee upheld the Administrator's decision rejecting the Apex claim. Apex thereupon filed its Motion for Clarification in the District Court, which the court denied on August 27, 1987, stating: "The Court refuses to review the decision of the Referee under the guise of 'clarification.'" Undaunted, Apex has appealed that determination.

This court is well aware of the lengthy, complex litigation and negotiation underlying the Stripper Well Exemption case. Great effort led to the Final Settlement Agreement, a document signed by the parties and approved by the District Court. That approval obviously encompassed the arbitration method of resolving claim disputes.

In *The Hertz Corporation v. Administrator, Independent Retailers of Motor Fuels Group*, 846 F.2d 756 (Temp. Emer. Ct.App.1988), this court recently refused to review the merits of an Arbitrator's deci-

sion and held that it was final and binding on the parties. At 760. The facts in *Hertz* are remarkably similar to those herein. In that case, Hertz's claim was rejected by the Administrator of the Retailers Fund on the ground that Hertz was not a Retailer as that term was used in the Retailers Order and the Final Settlement Agreement. Hertz appealed this decision to the court-appointed Arbitrator, who, like the court-appointed Referee in the case presently before us, was responsible for reviewing the disputed determinations of the Administrator. The Arbitrator, like the Referee, permitted oral argument on the claim, and then affirmed the Administrator's denial of the claim. Hertz's subsequent appeal to the district court was denied on the ground that the "binding arbitration provisions of the Settlement Agreement preclude appeal to this Court absent the most compelling circumstances." At 758. This TECA court agreed, and dismissed Hertz's appeal of that district court order:

> This court finds that the provisions of the settlement agreement unequivocally establish dispute resolution procedures. Because no compelling justification has been presented to this court by which we could find cause to review those procedures, we now dismiss the appeal as frivolous and without merit.

*Id.*

■ The legal principles underlying *Hertz* are fully applicable herein. The Supreme Court has strongly upheld the private arbitration method of dispute resolution in the Steelworkers Trilogy: *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Arbitration is a matter of contract; therefore, in determining whether a dispute is arbitrable under the contract, a court must examine the arbitration clause. *Printing Specialties, Local 680 v. Nabisco Brands*, 833 F.2d 102, 104 (7th Cir.1987), citing *A T & T*

*Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). When parties contract to submit their grievances to arbitration, the court's determination that the disputed claim is, on its face, governed by the terms of the contract should end the matter. *Nolde Brothers, Inc. v. Bakery Workers*, 430 U.S. 243, 250, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977), citing *Steelworkers v. American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346.

■ The issue herein is Apex's eligibility to claim against the Resellers Fund. Under the Settlement Agreement and the Resellers Order, it was the Administrator's duty to determine eligibility (¶ 5(a)), and the Referee's duty to review that determination, with full power to reverse it, if a claimant submitted his challenge of the Administrator's decision within fifteen days of the disapproval of the claim. (¶ 16.) Clearly Apex's grievance concerning the eligibility of its claim is, on its face, governed by the terms of the contract and is an issue to be submitted to the Administrator and Referee and not to the courts. Moreover, this court recognizes that "a contractual agreement containing a binding arbitration provision precludes judicial review of the arbiter's determination absent compelling circumstances." *Hertz*, at 759, citing *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294–96 (7th Cir.1975).

> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

*Steelworkers v. American Mfg. Co.*, 363 U.S. at 567–68, 80 S.Ct. at 1346. *See Hertz*, at 759.

In the case before us now, the Resellers Order stated that a prerequisite to participation in the Settlement was agreement that the Referee's decisions "shall be final

and binding on the claimant and shall not be subject to further review." Order at ¶ 16. Further, it mandated that each claimant waive any right to appeal the Referee's decision. *Id.* By signing the verification waiver and release, Apex agreed to these stipulations. However meritorious its claim may be, Apex waived its right to appeal the Referee's decision.

▬▬ It is true that compelling circumstances could lead to judicial review of an arbiter's decision. However, Apex has not suggested that either the Administrator or the Referee was unjust: There was neither allegation nor a scintilla of evidence of prejudice, abuse of power, disregard or misapplication of controlling law, unfairness or impropriety. *See Hertz,* at 759. In fact, the district court stated:

> The Court has every confidence that the Resellers Referee, Martin Lobel, who has, among a number of other appointments, been a professor of law, is capable of making a legal interpretation. As the Attorney perceptively notes, if every adverse determination of eligibility could be characterized as a legal question involving arbitrary treatment, this would permit the wholesale bypass of the Referee review procedures. While this Court has retained jurisdiction over the settlement, and the Court has broad equitable powers to remedy injustices, the Court believes no injustice has occurred. From a cursory observation, it appears to the Court that Apex, having received benefits under the Refiners Fund, is precluded from now claiming as a Reseller; however, this decision is not for the Court to make.

Opinion and Order of May 19, 1987, at 6.

The Referee gave Apex great latitude. Following the court's remand of the Apex claim to him, the Referee broadened the usual review procedures. Apex was permitted to file written objections and briefs and to present oral argument. The Referee's four-page decision to uphold the Administrator's denial of the Apex claim was a thorough and well-reasoned consideration of the arguments raised by the parties. He concluded that, "since Apex is a Refiner as defined by the Settlement Agreement and received money as such, it is not eligible under the Court's Order to claim as a Reseller."

An analysis of the terms of the Settlement Agreement is particularly within the realm of the independent Referee, who was empowered under the Resellers Order "to reverse the determinations of the Administrator on questions of eligibility." Resellers Order at ¶ 16. This court finds no circumstances that would cause it to review the Referee's ruling. "His decision is final as long as he interprets and applies the terms of the agreement in making his decision." *Hertz,* at 759.

In conclusion, the court holds that Apex, by becoming a signatory to the Final Settlement Agreement and by executing the Resellers Verification Waiver and Release, agreed that the Referee's review was its sole recourse for challenging the Administrator's denial, and waived its right to appeal the Referee's decision. We further find that the Administrator and Referee properly made their eligibility determinations as required under the terms of the Resellers Order, and that no compelling circumstances exist that would justify judicial review. Accordingly, we grant the motion of the Reseller Settlement Attorney to dismiss the appeal of Apex.