# In the United States Court of Federal Claims

No. 16-798C

(Filed: July 28, 2017)

_____
)
TIMOTHY LABATTE,            )
                           )
                Plaintiff,  )
                           )
v.                          )
                           )
THE UNITED STATES,          )
                           )
                Defendant.  )
                           )
                           )
_____)

*Erick Gregg Kaardal*, Minneapolis, MN, for plaintiff.

*Matthew Paul Roche*, U.S. Department of Justice – Civil Division, Washington DC, Counsel for defendant.

**OPINION**

**FUTEY**, Sr. Judge.

This case is before the Court on defendant's motion to dismiss, filed on November 7, 2016, for lack of subject matter jurisdiction and failure to state a claim. On December 8, 2016 plaintiff filed a response and a cross motion for summary judgment. Subsequently, on December 14, 2016, defendant filed a motion to stay briefing on plaintiff's motion for summary judgment. In its Order on December 20, 2016, this Court agreed it must first resolve jurisdictional issues. Plaintiff, in his complaint filed on July 5, 2016, is seeking to recover over $200,000.00 in monetary damages, contending the United States Department of Agriculture ("USDA") breached

the Settlement Agreement and its duty of good faith and fair dealing, by preventing a witness from testifying and further destroying the evidence of the claims process.

Oral Argument was held at the Court on June 19, 2017. This matter is now ripe for disposition.

## FACTUAL BACKGROUND

In 1999, a putative class of Native-American farmers filed a lawsuit against the Secretary of Agriculture, alleging that the USDA discriminated against them in the administration of farm loans and other benefits programs and failed to investigate their administrative discrimination complaints, violating the Equal Credit Opportunity Act, 15 U.S.C. § 1691. The alleged discriminatory acts occurred between January 1, 1981 and November 24, 1999. The U.S. District Court for the District of Columbia certified a class and ultimately, the case settled with a court approved Settlement Agreement, dismissing the action on April 29, 2011. The Settlement Agreement, *inter alia*, established several criteria for class membership:

a.  Must be a Native American as defined in the Agreement under Section II.BB.

b.  Must have farmed, ranched, or attempted to farm or ranch between January 1, 1981 and November 24, 1999.

c.  Must have applied to USDA in that time period for participation in a farm program.

d.  A class member must have filed a discrimination complaint with USDA either individually or through a representative.

The Settlement Agreement also established a Non-Judicial Process of review for the farmers' claims. The terms of the Settlement Agreement provided for finality of the process:

2

The Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the [d]istrict [c]ourt, or any other party or body, judicial or otherwise. The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process. (Revised Settlement Agreement ("SA") at § IX.A.9, *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS, (D.D.C. July 31, 2012), ECF No. 621-2.).

Also, the Settlement Agreement provided no role for the United States in the Non-Judicial Claims process. (SA § IX.A.10). The United States is defined as individually and collectively, the Executive Branch of the United States, its agencies, instrumentalities, agents, officers, and employees. (SA § II.BBB).

Timothy LaBatte, a member of the Sisseton-Wahpeton Tribe, satisfied the criteria as a plaintiff and became a party to a class action lawsuit which commenced in 2000. As a class action plaintiff in *Keepseagle v. Vilsack*, Mr. LaBatte engaged in a Non-Judicial Claims Process established through the subsequent *Keepseagle* Settlement Agreement to recover monetary damages pursuant to the Track B Neutral. *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS (D.D.C. Apr. 29, 2011).

The parties were required to submit their claims packages by December 27, 2011. These packages were then evaluated by the Claims Administrator for timeliness and completeness. All timely and complete claims packages were forwarded to the Track A or Track B Neutral in accordance with the claimant's election. Track A Neutral determined the elements of a claim by substantial evidence. (SA § IX.C.1). The Track B Neutral determined the elements of a claim by preponderance of the evidence and through documentary evidence admissible under the Federal Rules of Evidence. (SA § IX.D.1). If either the Track A or B Neutral determined that the claimant had not proven his or her claim, the Neutral denied the claim. The Settlement Agreement provided that third party claims adjudication companies suggested by class counsel

3

and approved by the district court would serve as the "Track A Neutral," and the "Track B Neutral" and would make the determinations of whether the claimants had proven the elements of their claims.

Mr. LaBatte submitted his claim on December 23, 2011, and choose the Track B Neutral process. Plaintiff submitted his information including a declaration from his attorney, Mr. Kaardal, which recounted his attempts to obtain the information needed to prove Mr. LaBatte's claims, including a credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family: (1) the identity of a similarly situated white farmer; and (2) that the Claimant filed a discrimination complaint with the USDA. (SA § IX.D.2.a).

On April 27, 2012, the Claims Administrator sent Mr. LaBatte's attorney, Mr. Kaardal, the notice required by Paragraph IX.B.6 of the Settlement Agreement. On May 23, 2012, Mr. LaBatte submitted additional information, including a declaration from Mr. Kaardal which recounted his attempts to obtain the information needed to prove Mr. LaBatte's claims. Mr. LaBatte asserted that he "did an exhaustive search for witnesses to support his claim" and found that many of those who could support his claim were deceased. Ultimately, he located two individuals who could testify through declarations, Tim Lake and Russel Hawkins. Mr. LaBatte's witnesses were his former Tribal Chair Russell Hawkins and another tribal member Tim Lake. At the time Mr. LaBatte sought to obtain signed declarations from these individuals, both were employees of the Bureau of Indian Affairs ("BIA"), an agency of the United States Department of the Interior. Subsequently, allegedly both Mr. Hawkins and Mr. Lake informed Mr. LaBatte that they would not sign draft declarations. Mr. LaBatte attached the unsigned declarations of Mr. Lake and Mr. Hawkins as an offer of proof when he submitted his claim.

4

(Compl. Ex. F, ECF No. 1-3). In his own declaration, Mr. LaBatte identified white farmers similarly situated who obtained loans from the government where LaBatte could not.

On October 30, 2012, the Claims Administrator informed Mr. LaBatte that a Track B Neutral rendered a final determination that his claim was denied. The denial letter outlined two reasons:

> [R]uns afoul of the Settlement Agreement's requirement that evidence on this issue, and on the issue of whether you had filed a complaint of discrimination with USDA, has been established, by a credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family.'… Since Mr. Kaardals' declaration makes clear that you obtained the information in the declaration from the two federal officials named, the Settlement Agreement's requirement have not been met. Further the statements in that declaration purporting to establish that white farmers received a benefit (loans) that you were denied, lack the specificity necessary to establish that those benefits were, in fact received by the white farmers.

The letter concluded that "[t]his Decision is final. It is not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the [d]istrict [c]ourt or any other party or body, judicial or otherwise." (Compl. Ex. G, ECF No. 1-5).

On November 26, 2012, Mr. LaBatte sent a letter to the Departments of Agriculture asserting that the Government instructed his witnesses not to sign their declarations in support of his claim and alleged that the Government violated its duty of good faith and fair dealing. He requested that he be awarded the full value of his claim under Track B Neutral, however, he did not allege that any specific provision of the Settlement Agreement had been violated. The Government did not respond.

On July 10, 2013, following denial of his settlement claim, Mr. LaBatte filed a motion to intervene and leave to file a complaint for intervention in the district court's *Keepseagle* case. *See* Mot., Statement of Mat. Facts, Points and Authorities and Cert. of Serv., *Keepseagle v.*

5

*Vilsack*, No. 1:99-cv-03119-EGS at 3 (D.D.C. July. 10, 2013), ECF No. 635. Mr. LaBatte asserted breach of the Settlement Agreement's implied covenant of good faith and fair dealing, violations of due process and the First Amendment by preventing his alleged witnesses from signing declarations on his behalf. The district court denied the motion. In its decision, the district court outlined the background information noting the details of the settlement process and analyzing the Settlement Agreement. The district court determined that Mr. LaBatte "… [D]oes not explain how the court's limited jurisdiction "to supervise the distribution of the Fund" conveys the ability to hear his claim that the government played an undue role "in the Non-Judicial Claims Process." *See* Memorandum Order, *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS at 11–12 (D.D.C. July. 14, 2014), ECF No. 692. Nor does he explain how exercising this jurisdiction would not contradict the Agreement's specific withholding of jurisdiction to review "Claim Determinations" or "any other determination made under this Non-Judicial Claims Process." *Id.* The court held that the claims were not factually interdependent and further explained that "[t]he underlying claim that formed the basis for this case – regarding discriminatory treatment by the Department of Agriculture – has nothing to do with Mr. LaBatte's claims that the government prevented individuals from signing declarations." The court also established that Mr. LaBatte was seeking review of the Track B Neutral's final determination of his claim, which is expressly prohibited by the Settlement Agreement. *Id.* at 10. The court rejected Mr. LaBattte's assertion that the Government's actions rendered the process so infirm that there effectively was no process, noting that he had followed the Track B process and he had his claim denied. *Id.*

Mr. LaBatte appealed the district court's decision. The U.S. Court of Appeals for the D.C. Circuit affirmed the district court's finding that it did not possess ancillary jurisdiction over

Mr. LaBatte's breach claim. *See Keepseagle v. Vilsack*, 815 F.3d 28 at 35 (D.C. Cir. Mar. 4, 2016). Further, the court held that the Settlement Agreement's enforcement clause provided the district court only with jurisdiction to enforce the distribution of the funds. *Id.* The court noted that "LaBatte's argument fails to account for the Agreement's strong finality language declaring all claim determinations final and unreviewable." *Id.*

Subsequently, on July 5, 2016, Mr. LaBatte filed his complaint with this Court asserting the Government breached the Settlement Agreement and the implied duty of good faith and fair dealing by directing Mr. Hawkins and Mr. Lake not to sign their declarations, failing to respond to his notice within 45 days and denying to process his claim under the Track B process without Government interference, which allegedly resulted in the loss of monetary damages. Plaintiff seeks a declaratory judgment against the United States for breach of the Settlement Agreement, and asks the Court to award his Track B claim in the amount of $202,700.52.

Defendant argues that this Court does not possess jurisdiction to entertain any of Mr. LaBatte's claims since they seek to reopen the Track B Neutral's final decision denying his claim. This, according to the defendant, will be against the finality provision of the Settlement Agreement. Defendant further argues that the Court does not possess jurisdiction to entertain Mr. LaBatte's claim that the Government breached the Settlement Agreement by failing to respond to his notice of violation within 45 days, because the Settlement Agreement expressly grants enforcement authority exclusively with the district court. Finally, defendant argues that the complaint should be dismissed for failure to state a claim, since the Government acted consistently with the terms of the Settlement Agreement by its employees having no role in the Non-Judicial Process.

## JURISDICTION

It is well settled that the United States, as sovereign, cannot be sued without its consent. *See United States* v. *Sherwood,* 312 U.S. 584, 586 (1941). Consent must occur through an unequivocal, express waiver of sovereign immunity. *Id.* The Tucker Act furnishes the requisite express waiver and grants the United States Court of Federal Claims subject matter jurisdiction where a claim rests upon at least one of the following: the Constitution; any Act of Congress; any regulation of an executive department; any express or implied contract with the United States; or liquidated or unliquidated damages in cases not sounding in tort. *See* 28 U.S.C. § 1491(a).

The Tucker Act, however, does not create any substantive right for monetary damages. To invoke the jurisdiction of the United States Court of Federal Claims, a complaint must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States,* 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("Jurisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.").

In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States,* 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff, as the non-moving party, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988). "Once the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

Furthermore, in *Hall v. United States*, 69 Fed. Cl. 51 (2005), the court addressed the standard of review on motions to dismiss. A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also Fisher* v. *United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal - the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act."); *see also* RCFC 12(b)(1).

The United States Court of Federal Claims has jurisdiction to review claims over the breach of settlement agreements with the United States. *See Kasarsky* v. *Merit Sys. Prot. Bd.*, 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving settlement agreements are governed by contract principles."; *see also Greco* v. *Department of Army*, 852 F.2d 558, 560 (Fed. Cir. 1988) "It is axiomatic that a settlement agreement is a contract."). In *Stovall*, this Court highlighted its reasoning reflected in the extensive body of cases, that "[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government. And the decisional law leaves no doubt that settlement agreements generally fall within this definition." *See Stovall* v. *United States*, 71 Fed. Cl. 696, 698 (2006); *Hall* v. *United States*, 69 Fed. Cl. 51, 55 (2005). Accordingly, absent some other bar, the Court has jurisdiction to adjudicate breach of contract claims.

This contract liability enforceable under the Tucker Act consent to suit, however, does not apply to "every agreement, understanding, or compact which can semantically be stated in

9

terms of offer and acceptance or meeting of minds." *Stovall*, 71 Fed. Cl. at 698.

## PLAINTIFF'S WAIVER

It has been a longstanding policy that parties to the contract can limit the scope of judicial review by contracting their rights away. The United States Court of Appeals for the Federal Circuit held that forum selection was enforceable, although subject to judicial scrutiny for fundamental fairness. *See Monsato Co. v. McFarling*, 302 F.3d 1295 (Fed. Cir. 2002); *Minesen Co. v. McHugh*, 671 F.3d 1332 (Fed. Cir. 2012). Such a [forum selection] clause is enforceable unless the party challenging it clearly demonstrates that is invalid or that enforcement would be unreasonable and unjust. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). Mr. LaBatte does not contend that the forum clause is unreasonable or fraudulent, nor does he suggest, like McFarling in *Monsato*, although unsupported by any law, that his voluntary failure to read the forum selection clause entitles him to exemption.

Parties often decide to waive certain rights in the contracts and forgo judicial review. The courts upheld such contracts as proper. *Long v. U. S. Postal Serv.*, 229 Fed. App'x. 919 (Fed. Cir. 2007); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009).

"The Supreme Court and this Court have long held that the government, if not otherwise prohibited by statute, can enforce a voluntary contractual waiver with the same force as private party, notwithstanding superior bargaining power." *See Minesen*, 671 F.3d at 1339 (citing *Town of Newton v. Rumery*, 480 U.S. 386, 392–94 (1987); *Lynch v. United States*, 292 U.S. 571, 579 (1934).

Furthermore, it has been well established that a party who signs an agreement is bound by its terms, unless he was fraudulently induced and not read it or was fraudulently misled as to its

content or significance. *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998). Moreover, in *Rumery*, the court explained that parties are often forced to make difficult choices which effectively forego statutory or constitutional rights. *Rumery*, 480 U.S. at 393. Parties can be held to such obligations of contract they entered knowingly and voluntarily. *Id.*

In this case, it took the parties a significant effort and several years of litigation to negotiate and come to the terms of the Settlement Agreement. Thus, on April 28, 2011, the district court approved the parties' Settlement Agreement, where it stated that "[t]he court has heard and considered all submissions in connection with the proposed Settlement and the files and records herein, including the Objections submitted..." Importantly, the court emphasized that the "[S]ettlement resulted from vigorous arm's-length negotiations, which undertaken in good faith by counsel with significant experience litigating civil right class actions." The court found the Settlement Agreement was "fair, reasonable and adequate." *See* Order On Pls.' Mot. for Final Approval of Settlement, Mot. for Approval of Class Rep. Service Awards, and Mot. for an Award of Att'ys' Fees and Expenses, *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS at 3 (D.D.C. Apr. 28, 2011), ECF No. 606. Subsequently, on April 29, 2011, the district court ruled in its Final Order and Judgement by entering and incorporating its order from April 28, 2011 and dismissing the action with prejudice. *See* Final Order and Judgment, *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS at 2 (D.D.C. Apr. 29, 2011), ECF No. 607.

It does not appear from the record that at any time plaintiff requested exclusion from the Settlement Class,[1] which would allow him an ability to prosecute his case free of the constraints

---

[1] The following persons timely and validly requested exclusion from the Settlement Class: James Byron Powel Sr., Betty Flannery, Gregory Toscano and Collen A. Faith. According to the district court's Order on Plaintiff's Motion for Final Approval of Settlement, Motion for Approval of Class Representative Service Awards, and Motion for an Award of Attorneys' Fees and Expenses, these individuals were excluded from that Class, and were not bound by the Order and Settlement Agreement.

11

of the Settlement Agreement. The Settlement Agreement is binding, and plaintiff did not raise any question as to the interpretation of the Agreement's provision. Neither did Mr. LaBatte dispute the plain language interpretation of this contract provision nor did he dispute that he knowingly and voluntarily agreed to the finality of the Track B Neutral decisions. Mr. LaBatte was not compelled or coerced into signing the contract.

During the Oral Argument, this Court asked plaintiff's counsel Mr. Kaardal a question. The Court: Did plaintiff know that the settlement agreement expressly provided that the determinations made by the claim administrators were not reviewable by any court and were final? Tr. 21: 18–21.

Mr. Kaardal: Yes, that was part of the agreement. Tr. 21: 21-23.

The Court: Okay. So he was aware of that. Tr. 21: 24.

Mr. Kaardal: Yeah, he understood it was very important. Tr. 21: 25; 22:1.

It is clear that Mr. Labatte understood and agreed to the Settlement Agreement to abide by a decision to be handed down by a Track B Neutral. Subsequently, plaintiff accepted the terms, which included that claims determinations by the Neutrals were final and non-reviewable *by any court.* It is also clear, as determined by the Track B Neutral arbiter, that because "the information in the declaration [is] from the two federal officials named, the Settlement Agreement's requirements have not been met." (Compl. Ex. G, ECF No. 1). As a competent party, by signing the Settlement Agreement and choosing to pursue a Non-Judicial Claims Process, unlike the plaintiffs in *Stovall* and *Hall*, Mr. LaBatte had contracted out his right to a judicial review.

Plaintiff argues that there is no provision in the Settlement Agreement that the parties waived Tucker Act jurisdiction. The mere absence of that provision, however, does not refute the

12

fact that all parties to the Settlement Agreement agreed that claims determinations by the Neutrals were final and non-reviewable *by any court*. Regardless, it was within the ambit of the clear language of the Settlement Agreement provision for the final settlement of such disputes by the agreed-upon Non-Judicial review process.

**FINALITY**

The parties in the *Keepseagle* Settlement Agreement agreed that "[t]he Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the [d]istrict [c]ourt, or any other party or body, judicial or otherwise." (SA § IX.A.9). It further states that "[t]he Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process." *Id.* Moreover, the Settlement Agreement defines a "claim determination" as "the binding and final result of a Track A or a Track B adjudication" that "represents whether a Class member is eligible to receive an award as a result of the Non-Judicial Claims Process, and if so, the amount of the award." (SA §§ II.C, IX.A.9).

The Federal Circuit has a longstanding practice of enforcing finality clauses in settlement agreements. *See Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) (holding settlement agreements, for *res judicata* principles, have the same effect as a final judgment on the merits); *Panduit Corp v. HellermannTyton Corp.*, 451 F.3d 819, 827 (Fed. Cir. 2006) (citing *U.S. v. Armour & Co.*, 402 U.S. 673, 681–82 (1971) (enforcing settlement agreement's finality clause in a patent case). It has also upheld settlement clauses requiring the parties to submit to final and unappealable arbitration. *In re Dept. of Energy Stripper Well*

13

*Exemption Litigation*, 846 F.2d 756, 758 (Fed. Cir. 1988). Additionally, it has held finality

clauses related to litigation at the Board of Patent Appeals and Interferences (BPAI) were

enforceable. *Goodsell v. Shea*, 651 F.2d 765, 767 (C.C.P.A. 1981) (enforcing the parties private

agreement not to appeal a BPAI decision); *cf. Utter v. Hiraga*, 845 F.2d 993, 997 (Fed. Cir.

1988) (indicating the court would enforce the parties' agreement not to appeal an arbitrator's fact

findings incorporated into a BPIA decision).

The Supreme Court has indicated its support for enforcing finality clauses as well. *See*

*U.S. v. Armour & Co.*, 402 U.S. 673, 681–82 (1971) (holding finality clause in consent decree

waives the right to litigate the issues); *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757,

764–65 (1983) (enforcing collective bargaining agreement providing contract disputes must be

decided by final and unappealable arbitration).

Mr. LaBatte's arguments before this Court are similar to the ones he litigated in the

district court and which decision he later appealed. The district court closely examined the terms

of the settlement agreement and reconciled provision to supervise the distribution of the Fund

and ensure that Debt Relief and more specific provision of the court from reviewing any "Claim

Determinations, and any other determinations made under the Non-Judicial Claims process,"

Memorandum Order, *Keepseagle v. Vilsack*, No. 1:99-cv-03119-EGS at 9, 12 (D.D.C. July 14,

2014), ECF No. 692 (quoting SA § IX.A.9), and held that "the Agreement may easily be read to

foreclose judicial reviews of certain decisions as to who is entitled to receive an award, while

permitting judicial supervision over distribution of the Fund… after those decisions have been

made," *id.* More importantly, the Court of Appeals for the District of Columbia Circuit affirmed

the district court's holding and noted that "LaBatte's argument fails to account for the

14

Agreement's strong finality language declaring all claim determinations final and unreviewable." *See Keepseagle v. Vilsack*, 815 F.3d 28 at 34 (D.C. Cir. Mar. 4, 2016).

It is not necessary, therefore, to continue deliberating concerning other allegations in this matter. If the Court lacks jurisdiction it must dismiss the action. *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006), *reconsideration denied by* 73 Fed. Cl. 524 (2006); *Miller v. United States*, 67 Fed. Cl. 195 (2005); *see also* RCFC 12(h)(3).

## CONCLUSION

The Settlement Agreement states that, "[d]eterminations made under this Non-Judicial Claims Process and *any other determinations* are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the [d]istrict [c]ourt, or any other party or body, judicial or otherwise." (SA § IX.A.9). Mr. LaBatte knowingly and voluntarily waived his right to judicial review, and there was a clear intent of the parties agreeing to the finality of the Track B Neutral result.

For the above stated reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and plaintiff's complaint is hereby **DISMISSED**. The Clerk is directed to enter judgment accordingly. No Costs.

**IT IS SO ORDERED.**

BOHDAN A. FUTEY
Senior Judge

15